UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

RICHARD LYNN BOYER,            )
                               )
            Plaintiff,         )
                               )
      v.                       )     No. 4:18 CV 1298 DDN
                               )
ANDREW M. SAUL,[1]             )
Commissioner of Social Security.)
                               )
            Defendant.         )

## MEMORANDUM OPINION

This action is before the Court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff Richard Lynn Boyer for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401-434. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the decision of the Commissioner is affirmed.

## BACKGROUND

Plaintiff Richard Lynn Boyer was born on July 7, 1964, and filed his application for Title II benefits on August 31, 2015.[2] (Tr. 10.) Plaintiff alleged a disability onset date of February 28, 2015, for back and neck problems, arthritis, attention-deficit hyperactivity disorder ("ADHD"), and depression. (Tr. 122-23.) His application was denied by a disability examiner on February 11, 2016. (Tr. 136.) Plaintiff appealed the decision and requested a hearing by an administrative law judge ("ALJ"). (Tr. 142.)

---

[1] The Hon. Andrew M. Saul is now the Commissioner of Social Security. He is therefore substituted as the defendant in this case in his official capacity. Fed. R. Civ. P. 25(d). No further action needs to be taken to continue this suit. 42 U.S.C. § 405(g).

[2] For his DIB claim, the date he was last insured was December 31, 2016. (Tr. 10.)

On November 8, 2017, plaintiff appeared before an ALJ. (Tr. 65.) A vocational expert also testified at the hearing. (*Id.*) On December 27, 2017, the ALJ denied plaintiff's application. (Tr. 10-17.) The Appeals Council received additional evidence from plaintiff but denied his request for review (Tr. 1-5) and the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.984(b)(2). The case is now before this Court for review.

## MEDICAL HISTORY

The Court adopts the parties' statements of uncontroverted material facts (Docs. 9, 14.) These facts, taken together, present a fair and accurate summary of the medical record and testimony at the evidentiary hearing. The Court discusses specific facts as they are relevant to the parties' arguments.

## DECISION OF THE ALJ

At Step One, the ALJ found that plaintiff met the insured status requirements and had not engaged in substantial gainful activity during the period from his alleged disability onset date of February 28, 2015, through the date he was last insured on December 31, 2016. (Tr. 12.) At Step Two, the ALJ found the following. Through the last date he was insured, plaintiff had the following medically determinable impairments: cervicalgia, obesity, remote history of amphetamine abuse, attention deficit hyperactivity disorder (ADHD), and major depressive disorder, in accordance with 20 C.F.R. § 404.1521. (Tr. 12.) The ALJ also found that plaintiff's physical and mental impairments, considered singly and in combination, did not significantly limit his ability to perform basic work activities for twelve consecutive months. (Tr. 12.) Thus, plaintiff did not have a severe impairment or combination of impairments. (Tr. 12, 16.) The ALJ found that plaintiff's alleged spinal stenosis of the lumbar region was not medically determinable. (Tr. 13.) In accordance with 20 C.F.R. § 404.1520(c), the ALJ concluded that plaintiff was not disabled at any time from February 28, 2015 (alleged onset date) through December 31, 2016 (date of last insured). (Tr. 16.)

The ALJ made no findings concerning Steps Three, Four, or Five, after concluding that plaintiff was "not disabled" as defined under the Social Security Act §§ 216(i) and 223(d). (Tr. 17.)

# GENERAL LEGAL PRINCIPLES

The Court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id*. In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision. *Id*. As long as substantial evidence supports the decision, the Commissioner may not be reversed merely because substantial evidence exists in the record that would support a contrary outcome or because the Court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to benefits, a claimant must prove he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. § 423(d)(1)(A); *Pate-Fires*, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing the five-step process); *Pates-Fires*, 564 F.3d at 942.

Steps One through Three require the claimant to prove: (1) he is not currently engaged in substantial gainful activity; (2) he suffers from a severe impairment; and, (3) his condition meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform his past relevant work (PRW). *Id.* at § 404.1520(a)(4)(iv). The claimant bears the burden of demonstrating he is no longer able to return to his PRW. *Pate-Fires*, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to his PRW, the burden shifts to the Commissioner at Step Five to show that the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. *Id*.; 20 C.F.R. § 404.1520(a)(4)(v).

**DISCUSSION**

The only substantial issue before the Court is whether substantial evidence supports the Commissioner's final decision that plaintiff was not disabled, *see* 42 U.S.C. § 405(g), because the ALJ determined plaintiff did not have a severe impairment that affected his ability to work. (Tr. 12, 16.) Plaintiff argues that this Step 2 finding is not supported by substantial evidence. Therefore, he argues that the case should be remanded to the defendant Commissioner for further assessment of the severity of plaintiff's impairments and for findings at Steps Three, Four, and Five. (Doc. 9.) The Court disagrees.

At Step 2, plaintiff must prove he has a "severe impairment' by showing: (1) he suffers from a "medically determinable" condition, or combination of conditions, caused by an anatomical, physiological, or psychological abnormality that can be confirmed by medically acceptable clinical or laboratory diagnostic techniques. 20 C.F.R. § 404.1508; (2) the condition is "severe;" and, (3) the condition is expected to persist for at least twelve months. *Id.* at § 404.1509. "Severe" means the condition significantly limits the plaintiff's physical or mental ability to do basic work activities, irrespective of age, education, or work experience. *Id.* at § 404.1520(c). Basic work includes: (1) physical functioning like walking, standing, sitting, lifting pushing, pulling, reaching carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) using judgment; (5) responding appropriately to supervision, co-workers, and unusual work situations; and, (6) dealing with changes in a routine work setting. 20 C.F.R. § 404.1522(b); SSR 85-28p.

In making its determination, this reviewing court must consider evidence that supports the ALJ's decision along with evidence that detracts from it. *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). If, after review, the court finds it possible to draw two inconsistent positions from the evidence and one of those positions supports the Commissioner's findings, the Court must affirm the decision of the Commissioner. *Id.*

### A.  Weighing Opinion Evidence

Plaintiff argues that the ALJ failed to properly weigh the opinion evidence of Nurse Practitioner Patricia Allen. Step 2 involves a determination, based on the medical evidence,

4

whether the claimant has an impairment or combination of impairments that significantly limit the claimant's ability to perform basic work activities. *See* 20 C.F.R. § 404.1520(a)(4)(ii). When considering medical evidence, "other medical sources," including nurse practitioners, cannot be used to establish the existence of a medically determinable impairment because medical disability must be established by evidence from an "acceptable medical source." *Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007); 20 C.F.R. § 404.1513(d). In claims filed before March 27, 2017, other medical evidence does not include diagnosis, prognosis, or statements that reflect judgments about the nature and severity of impairments. 20 C.F.R. §§ 404.1527, 404.614. Other medical sources may provide insight into the severity of the impairments and how they affect the ability to work, after the medically determinable impairments are established. *See Sloan*, 499 F.3d at 888. However, the ALJ may appropriately give more weight to the opinion of an "other medical source" who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source. *Id.* at 889.

Plaintiff argues ALJ failed to weigh the opinion of Nurse Practitioner Allen, whose consultative exam report, dated December 11, 2015, notes a 10 to 15 pound limit on lifting and carrying due to plaintiff's back pain and related sciatica. (Tr. 294.) Conversely, defendant argues, although it agrees that the ALJ did not expressly cite this specific finding by Ms. Allen, that the lifting and carrying restriction was not supported by the record. First, Ms. Allen saw plaintiff only once. (Tr. 290.) In contrast, plaintiff's treating physician John S. Pearson, D.O.,[3] treated plaintiff on four occasions over a six-month period. (April 22, 2014 (Tr. 267-70); June 23, 2014 (Tr. 271-75); August 21, 2014 (Tr. 276-79); and October 22, 2014 (Tr. 280-83)). Second, the ALJ states that he carefully considered the entire record when making his findings, including all of plaintiff's symptoms to the extent that they were consistent with "objective medical evidence" and "other evidence." (Tr. 12-13.)

In the first part of the Step 2 determination, the ALJ considered whether the alleged impairments were medically determinable and reasonably expected to produce the plaintiff's claimed symptoms. (Tr. 13.) If they were medically determinable, the ALJ must then evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which

---

[3] Treatment notes from four visits ranging from April 22, 2014 through October 22, 2014, although the transcript index incorrectly notes a through date of November 22, 2014. It appears the plaintiff stopped seeking medical treatment after October 22, 2014, approximately four months before plaintiff's alleged onset date of February 28, 2015.

they impose functional limitations on him. (*Id.*)  Pursuant 20 C.F.R. § 404.1513(a), the ALJ appropriately considered Ms. Allen's opinion regarding all medically determinable impairments in the second part of the Step 2 analysis.

The ALJ determined that the alleged spinal stenosis of the lumbar region was not sufficiently supported by the medical evidence.  The ALJ appropriately made this determination based on the examination and treatment notes from an acceptable medical source, plaintiff's treating physician, Dr. John S. Pearson.  Importantly, Dr. Pearson did not note any physical abnormalities of the back and never diagnosed specifically any low back pain. (Tr. 16, 266-83.) The ALJ stated there was no muscle atrophy in any of the doctor's examination or treatment notes. (*Id.*) Further, there was no nerve conduction study or other diagnostic tool that would establish neuropathy or radiculopathy. (*Id.*)  There was little medical evidence in the file during the relevant period, February 2015 to December 2016, and there was no medical evidence in the file after February 10, 2016. (Tr. 16.)

The ALJ did not credit Ms. Allen's findings to the extent that they referenced the alleged non-medically determinable back pain.  Additionally, because the back impairment was non-medically determinable it was not necessary for the ALJ to consider other source evidence to establish the severity of the impairment or how it affected plaintiff's ability to work.  Thus, the 10 to 15 pound limit on lifting "due to [plaintiff's] lower back pain and claim of sciatica" (Tr. 294) was not supported by substantial evidence.  The ALJ also concluded that the plaintiff's, not fully plausible subjective complaints were the only basis for the back impairment. (Tr. 16.) Therefore, the ALJ's determination, that spinal stenosis of the lumbar region was not medically determinable, was supported by substantial evidence.

Further, the ALJ lawfully did not give more weight to the "other medical source," because Nurse Practitioner Allen had not seen plaintiff more than the treating physician. *Sloan*, 499 F.3d at 889.  Yet, the ALJ weighed Ms. Allen's findings that *were* consistent with the medical evidence and the record.  For example, her observations included that plaintiff put on his coat with a normal range of motions (Tr. 14, 294), made severe grimacing and shaking movements during testing that were "disproportionate to the task required" (Tr. 293), reacted to position changes and examination in ways that were disproportionate to the stated injury/ailment, and did not "put forth much effort" during the examination (*id.*).  She found that there were no limitations in plaintiff's ability to sit, stand, and walk.  (Tr. 14).  Despite plaintiff's poor effort as

6

reported by Ms. Allen, plaintiff maintained (4/5) strength in his upper and lower extremities. (Tr. 14, 287-88.)

Finally, plaintiff argues that the ALJ erred when stating that plaintiff's "physical examinations were normal." (Tr. 14.) Plaintiff identified examples of what he believes are abnormal findings in Dr. Pearson's treatment notes, including: plaintiff was taking pain medication and complained of constipation; plaintiff complained of neck pain; the exam revealed cervical lordosis, spasms, warmth, and tenderness; and, range of motion movement caused him pain.

Errors in an ALJ's opinion-writing technique will not cause a reversal of the Commissioner's final decision, if they were unlikely to affect the outcome of the claim. *Strongson v. Barnhart,* 361 F.3d 1066, 1072 (8th Cir. 2004). Plaintiff in this case objects to the ALJ's characterization of certain noted examination findings as "normal." However, this term appears in the ALJ's opinion only in the paragraph addressing the severity and limitations due to plaintiff's obesity. In that context, the ALJ noted that Dr. Pearson's and Ms. Allen's notes confirm that obesity had not significantly limited the plaintiff's physical activities. In support of that finding the ALJ referred to Ms. Allen noting that plaintiff could sit, stand, and walk with minimal difficulty. (Tr. 14.) The ALJ referenced Dr. Pearson's treatment notes which do not report physical problems related to obesity (Tr. 14-15 (Ex. 1-F), 267-83). On October 22, 2014, Dr. Pearson provided plaintiff with information regarding his Body Mass Index ("BMI") and pamphlets on nutrition, exercise, and fitness but did not note any limitations based on plaintiff's BMI. (Tr. 282.) These treatment notes support the ALJ's conclusion that, in terms of obesity, the providers found normal physical examinations. Plaintiff's assertions of abnormal findings related to cervical abnormalities and medication side effects are unrelated to the ALJ's use of the word "normal."

Accordingly, substantial evidence supports the ALJ's determinations that plaintiff's spinal stenosis of the lumbar region was medically non-determinable, that the acceptable medical source and the other medical source evidence were appropriately weighed, and that the ALJ did not mischaracterize the evidence through the use of the word "normal."

### B. Imaging Studies

Plaintiff argues the ALJ erred by failing to request current imaging studies and ignoring those cited in the prior ALJ's decision which are in the record and referenced in Ms. Allen's report, despite his own attorney telling the ALJ the "record is complete" at the hearing held on November 8, 2017. (Tr. 69.) Plaintiff argues that the ALJ appears to have found plaintiff's cervical impairments not severe, because there was no imaging to support his testimony. (Doc. 9 at 6.) Defendant argues that the 2013 ALJ decision also denied plaintiff's earlier disability application. (Tr. 101-12.) Defendant further argues that there was no need for the ALJ to request the earlier medical imaging evidence, because it was made well before the current relevant period, it did not reflect plaintiff's medical condition during the relevant period, and the current record contained other evidence sufficient to base a decision on.

The ALJ has a duty to develop the record fully and fairly. *Smith v. Barnhart,* 435 F.3d 926, 930 (8th Cir. 2006). However, there is no bright line test for determining when the ALJ has failed to develop the record; the determination must be made on a case-by-case basis. *Battles v. Shalala,* 36 F.3d 43, 45 (8th Cir. 1994). Here, the ALJ noted plaintiff's alleged lower back pain was not supported by imaging or other testing and there was no muscle atrophy referenced in the treatment notes, the plaintiff did not present with back pain to the treating physician, and Dr. Pearson never diagnosed any low back pain. (Tr. 16.)

The imaging study cited in the prior decision made no clear reference to the lumbar region, the subject of plaintiff's current claim. Rather, the earlier ALJ decision stated that x-rays of the "cervical spine" showed the most prominent loss of vertebral disc space height was at C4-5, and the MRI of the cervical spine showed degenerative disc disease. (Tr. 107). Because there is no reference to lumbar imaging, the ALJ did not need to consider or include the unrelated neck imaging in the record. Additionally, the ALJ had adequate evidence in the current record to conclude whether cervicalgia was medically determinable without obtaining old imaging. The record also supports a reasonable inference that plaintiff's neck pain was less significant in the previously adjudicated period, and his alleged current suffering was exaggerated, because plaintiff stopped treatment and stopped taking prescribed medication.

If an impairment can be relieved by medical treatment or medication, the impairment is not disabling. *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009). Here, Dr. Pearson's treatment notes repeatedly state that plaintiff's neck pain symptoms were alleviated by medication. The

ALJ had substantial evidence to support his decision without reaching the earlier medical records. The record was fully and fairly developed.

### C. Weighing Medical Sources

Plaintiff argues that the ALJ failed to properly weigh the examining and non-examining sources in accordance with 20 C.F.R. § 404.1527(c)(1). More specifically, plaintiff argues that the ALJ accorded limited weight to the opinion of the consultative examiner psychologist Laura R. Tishey, Psy.D., while giving greater weight to the opinion of Kim Dempsey, Psy.D., a non-examining state agency psychological consultant. Defendant argues that the ALJ appropriately weighed the opinions.

Generally, pursuant 20 C.F.R. § 404.1527(c)(1), an ALJ gives more weight to the medical opinion of a source who has examined a claimant than to the medical opinion of a source who has not examined the claimant, because examining sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of medical impairments and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone. 20 C.F.R. § 404.1527. An ALJ will not give controlling weight to the consultative examiner, if the ALJ finds that the source is not consistent with a treating source's medical opinion as to the nature and severity of impairments; the source is not well-supported by medically acceptable clinical and laboratory diagnostic techniques; or, if the source is not consistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527. An ALJ must consider the following factors when deciding whether to give a treating source's medical opinion controlling weight: the length of the treatment relationship and the frequency of examination, *id.* at (c)(2)(i); the nature and extent of the treatment relationship, *id.* at (c)(2)(ii) ; whether the medical source relied on relevant evidence to support its medical opinion, particularly medical signs and laboratory findings, *id.* at (c)(3); and whether the medical opinion is consistent with the record as a whole, *id.* at (c)(4). After weighing the appropriate factors, the ALJ should provide the reasoning for his determination.

In the case at bar, because plaintiff has determinable mental impairments, ADHD and major depressive disorder, the ALJ considered the four broad areas of mental functioning, the "paragraph B" criteria. Listing of Impairments, 20 C.F.R. § 404, Subpart B, Appendix 1, § 12.00. To satisfy the paragraph B criteria, a mental disorder must result in "extreme" limitation

of one or "marked limitation" of two of the four areas of mental functioning. *Id*. It is unlikely, even if the ALJ gave controlling weight to Dr. Tishey's opinion, that the standard for paragraph B would have been met in plaintiff's case, because Dr. Tishey found the highest notable limitation was "moderate." (Tr. 298-99.)

In his written opinion the ALJ found that the "social functioning capacity found by Dr. Tishey is more restricting than the findings of the treatment providers, who found only mild limitations." Plaintiff argues that the ALJ mischaracterized the treatment notes which do not use the term "mild." However, the law does not require the ALJ to use the specific language of the treatment record, but rather requires the ALJ to make a determination supported by substantial evidence in the record as a whole. *Pate-Fires*, 564 F.3d at 942.

When describing the medical evidence, the ALJ summarized plaintiff's objective tests and treatment notes and found that plaintiff was only mildly impaired by depression or ADHD. Plaintiff agrees that in two of four of Dr. Pearson's treatment notes his mental status examinations were "normal." (Tr. 268, 273.) Importantly, although the other two notes indicate depressed mood with congruent or blunted affect, all four treatment notes indicate "the symptom is alleviated by medication." (Tr. 267, 271, 276, 280.) In the treatment note dated June 23, 2014, Dr. Pearson wrote that the ADHD complaint does not limit activities under treatment (Tr. 271); on August 21, 2014, he wrote ADHD did not limit activities and that medication has helped (Tr. 276); and on October 22, 2014, he wrote also that ADHD does not limit activities and that medication has helped (Tr. 280). The ALJ also considered that Dr. Pearson did not document any significant mental limitations in any examination. Although plaintiff's symptoms were alleviated with medication, Dr. Tishey's report noted that plaintiff had not been taking medication for his mental impairments since 2014. She noted empty prescription bottles for Adderall filled December 19, 2014; Hydrocodone filled October 16, 2013; and Bupropion filled November 17, 2014. (Tr. 296.) These treatment notes provide substantial support for the ALJ's determination that the mental impairments were only mildly limiting and untreated during the relevant period. *See Brace*, 578 F.3d at 885 (holding an impairment that can be controlled by treatment or medication cannot be considered disabling).

The ALJ was consistent with the law when he did not give the treating source's medical opinion controlling weight, because the nature and severity of the impairment was not consistent with Dr. Pearson's treatment notes. Therefore, the other relevant factors must be considered.

Considering those factors, neither Dr. Tishey nor Dr. Dempsey had a long relationship treating plaintiff. But, the personal nature of an examination weighs in favor of Dr. Tishey. However, the ALJ lawfully gave controlling weight to Dr. Dempsey's findings, because the medical opinion evidence and the record as a whole supports her findings that plaintiff was only mildly impaired.

Further, contrary to plaintiff's argument, the ALJ made no mention of weighing Dr. Tishey's opinion as subordinate to Dr. Dempsey's; rather, the ALJ weighed Dr. Tishey's and Dr. Dempsey's opinions individually in discrete paragraphs. (Tr. 15-16.) In addition, the ALJ considered "Dr. Tishey's overreliance on plaintiff's subjective allegations regarding his mental status as further suggesting that her opinion did not merit significant weight." (Tr. 15, 297-99.) Accordingly, the ALJ did not give controlling weight to Dr. Tishey's opinion, because it was not consistent with the treating source record, while Dr. Dempsey's opinion was consistent with Dr. Pearson's record.

Dr. Dempsey examined the record to determine plaintiff's psychological functioning. (Tr. 16.) This was accomplished in a psychiatric review technique form (PRT) (Tr. 126-27.) Dr. Dempsey found only "mild" limitations in plaintiff's ability to maintain social functioning and to maintain concentration, persistence, and pace, with no limits in activities of daily living and no decompensation or deterioration of mental functioning of extended duration. (*Id.*) The ALJ found that Dr. Dempsey's opinion was consistent with the evidence in the record that suggested that plaintiff is only mildly impaired by depression or ADHD. Accordingly, the ALJ's decision to give Dr. Dempsey's opinion greater weight is consistent with 20 C.F.R. § 404.1527.

The ALJ's determination that plaintiff's mental impairments were not severe is supported by substantial evidence in the record as a whole.

### D. Characterization of Evidence and Credibility

Plaintiff argues that the ALJ mischaracterized evidence and the plaintiff's testimony as inconsistent with the record. The evaluation of a plaintiff's subjective complaints "is not an examination of an individual's character." SSR 16-3p. Instead, the ALJ should consider all evidence in the record and incorporate the factors to be considered under regulations 20 C.F.R. § 404.1529(c)(3). These factors include daily activities; the location, duration, frequency, and intensity of pain; the medication used to alleviate pain; any other treatment for pain; any other

measures taken by the claimant to relieve pain; and failure to comply with treatment. *Id.* An ALJ may only discount a claimant's subjective complaints for "good reasons." 20 C.F.R. § 404.1529; SSR 16-3p.

The ALJ gave good reasons for discounting plaintiff's subjective complaints. First, The ALJ considered evidence of malingering or symptom exaggeration. In *Baker v. Barnhart*, the Court of Appeals determined that the ALJ was entitled to find the claimant's allegations regarding his limitations were not totally credible due to exaggeration of symptoms in contradiction of the record and giving less than his full effort particularly since observations made during tests cast suspicion on that claimant's motivations and credibility. 457 F.3d 882, 892-93 (8th Cir. 2006). Likewise, here, despite plaintiff testifying he had limited range of motion to turn his neck side to side, the ALJ noted that Nurse Practitioner Allen observed plaintiff put on his coat with a normal range of motion in his neck, shoulder, elbows, and hands. She also observed plaintiff open his car door and drive, which included him turning his neck, without the facial grimacing or shaking movements. Ms. Allen reported plaintiff "did not put forth much effort," and that his reaction to position changes during the examination was disproportionate to his asserted condition.

In *Baker*, the Eighth Circuit explained that "the ALJ discredited Baker's subjective complaints of pain after considering . . . symptom exaggeration . . . , [and] Baker's choice not to take pain medication," *See Baker*, 457 F.3d at 893. Similarly, here where the testimony and record are fraught with inconsistencies, the ALJ noted plaintiff's lack of treatment, discontinuation of medication which alleviated his symptoms, and the fact that plaintiff did not pursue the radiologic examination Dr. Pearson ordered on June 23, 2014. Despite discontinuing treatment, plaintiff testified to "waves of depression," numbness and shaking in his hands, neck pain, and back spasms. Plaintiff told Dr. Tishey "that he suffered from back pain for about ten years" but failed to address his back pain in any of his visits to his treating physician, Dr. Pearson. (Tr. 267-83, 296.) Further, plaintiff testified he had to spend all day in his recliner to alleviate pain and spent only a few minutes per day outside, despite his visibly suntanned face at the hearing held before the ALJ. (Tr. 14.)

Measures taken to relieve pain and the failure to comply with treatment are important factors. 20 C.F.R. § 404.1529(c)(3). Here, as previously discussed, plaintiff discontinued medication despite the fact that his symptoms were alleviated by it. Plaintiff told Dr. Pearson he

was unable to get the radiological examination of the cervical spine or continue Wellbutrin due to cost. (Tr. 276, 279.) Plaintiff argues that the ALJ's failure to consider his financial inability to afford treatment is reversible error. Conversely, defendant argues that, given plaintiff's allegation of debilitating pain and mental limitations, plaintiff pursued no financial aid for treatment at any time after his onset date. (Doc. 14 at 5-6.)

Plaintiff's failure to seek treatment suggests the impairments were not disabling. *Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014); *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 1996). Generally, courts defer to the ALJ's evaluation of credibility provided the determination is supported by "good reasons and substantial evidence." *Turpin*, 750 F.3d at 993. In *Edwards*, the Court of Appeals noted that, if one's pain was as severe as alleged, one would have sought regular medical treatment; failure to do so seriously undermines a disability claim. *Id*.

There is no evidence in the record that plaintiff applied for or attempted to obtain indigent medical benefits in an effort to seek treatment. Plaintiff was at least familiar with the potential availability of aid, because he testified that he was eligible for food stamps. (Tr. 72.) Consequently, plaintiff's inability to afford treatment was not a justifiable cause for treatment non-compliance, absent a showing that he at least attempted to seek even minimal indigent care. The record supports the ALJ's finding in this respect.

Plaintiff argues that the ALJ mischaracterized evidence inconsistent with Dr. Tishey's opinion and inconsistent with plaintiff's claims regarding isolative behaviors due to "waves of depression" that "shut him down completely." This Court has already found the ALJ, consistent with the regulations, did not heavily weigh Dr. Tishey's opinion or the plaintiff's exaggeration of pain. The ALJ also considered plaintiff's own statements claiming he was unable to work largely due to physical impairments; when asked, he ranked his mental impairments as the least limiting of his medical conditions. Moreover, plaintiff testified that his back spasms stopped him from getting through an eight-hour shift (Tr. 91). But in this respect the ALJ found plaintiff's back pain was medically non-determinable.

## **CONCLUSION**

For the reasons set forth above, the ALJ's Step 2 finding that plaintiff does not have a severe physical or mental impairment is supported by substantial evidence. The decision of the Commissioner of Social Security is affirmed. An appropriate Judgment Order is issued herewith.

                                                  /s/   David D. Noce  
                                     **UNITED STATES MAGISTRATE JUDGE**

**Signed on January 24, 2020.**